DALY, RESPONDENT, *v.* KELLEY, 'APPELLANT.

(No. 4,106.)

(Submitted January 17, 1920.   Decided February 19, 1920.)

[187 Pac. 1022.]

*Sheriffs—Attachment—Caretaker — Unauthorized Appointment —Compensation—Liability — Deputies—Powers — Excessive Verdicts.*

Sheriffs — Attachment—Caretaker—Unauthorized Appointment—Compensation—Personal Liability.
1.   A sheriff who fails to secure an order authorizing the appointment of a keeper before appointing him may be held personally liable for his compensation, the keeper being under no obligation to first ascertain whether such an order has been secured.

Same—Caretaker—Appointment by Deputy—Liability for Compensation.
2.   The fact that the appointment of the keeper of attached property referred to in paragraph 1, *supra*, was made by defendant sheriff's deputy did not relieve defendant of liability for the keeper's compensation, in view of section 350, Revised Codes, defining the powers of deputies, and the maxim *"qui facit per alium facit per se."*

Work and Labor—*Quantum Meruit*—Proof of Express Contract—Variance.
3.   One suing on *quantum meruit* for the value of services rendered may testify to an express promise to pay a specified amount; the only effect in such a case of proof of an express contract fixing the price, being that the stipulated price becomes the *quantum meruit* in the case; hence the testimony is not objectionable on the ground of variance.

Same—Value of Services—Testimony of Unqualified Nonexpert Witness —Effect.
4.   Where plaintiff in an action on *quantum meruit,* after testifying to an express agreement fixing his compensation, stated that the sum agreed upon was the reasonable value for the services rendered, the fact that he did so without first technically qualifying as an expert witness was inconsequential.

Sheriffs—Deputies—Appointment of Caretaker—Proper Cross-examination.
5.   Since defendant sheriff's deputy had the authority to appoint a caretaker for attached property as an incident to his duty to attach and safely keep it, a question on cross-examination whether this was the first caretaker he had ever appointed was not improper.

Same—Caretaker—Compensation.
6.   The fact that plaintiff, while acting as keeper of attached mining property, was at the same or part of the time acting in a different capacity for the receiver, did not preclude him from recovering the reasonable value of his services as keeper under appointment by defendant.

Same—What not Excessive Verdict.
7.   A verdict of $800 for services as keeper of attached mining property for a period of 400 days, part of which time plaintiff was employed by the receiver as superintendent, *held* not excessive.

*Appeal from District Court, Missoula County; Asa L. Duncan, Judge.*

ACTION by Jesse Daly against W. L. Kelley.   From a judgment for plaintiff and an order denying him a new trial, defendant appeals.   Affirmed.

Cause submitted on briefs of Counsel.

*Mr. Henry C. Stiff* and *Mr. Thomas N. Marlowe,* for Appellant.

*Mr. Harry H. Parsons,* for Respondent.

MR. JUSTICE MATTHEWS delivered the opinion of the court.

As appears from the record, appellant, Kelley, was sheriff of Missoula county, and one W. B Coffey was his deputy in charge

of the office. On January 15, 1914, a writ of attachment was placed in Coffey's hands and by him served by taking into his possession, as deputy sheriff, a considerable amount of personal property, and he thereupon posted on the property of the mining company, defendant, a notice of attachment, signed: "W. L. Kelley, sheriff. W. B. Coffey, Deputy Sheriff"—to which he added: "I have this day appointed Jess Daly as caretaker of the above-attached property." No order of court was secured authorizing the appointment of a keeper or caretaker for the property. On April 7, 1914, the district court of Missoula county appointed a receiver for the property of the mining company and placed him in charge, who, as he testified, "took charge of the property subject to all encumbrances and attachments." He did not "attempt to supersede Mr. Daly's authority there as caretaker," but appointed him also superintendent under the receivership. No revocation of Daly's appointment as keeper was made, and he remained in charge for something over 400 days. The appellant having refused to pay respondent for his services, suit was brought for the "reasonable value" thereof, alleged to be $3 per day.

At the close of respondent's case, appellant moved for a judgment of nonsuit, which motion was overruled. Testimony on behalf of appellant was introduced, and the trial resulted in a verdict for $800, and judgment was entered accordingly. Appellant moved for a new trial, which motion was denied. This appeal is from the judgment and from the order denying a new trial.

1. Appellant's first specification is that the court erred in not sustaining his objection to the introduction of any testimony, on [1] the ground that the suit was brought against Kelley as an individual for an act claimed to have been done by him in his official capacity, and that it nowhere appears in the complaint that an order was made by the court authorizing the appointment of a keeper or caretaker.

Section 3167, Revised Codes, under the head of "Fees of Sheriff," provides: "For the expense in taking and keeping pos-

session of and preserving property under attachment, execution, or other process, such sum as the court or judge may order, not to exceed the actual expenses incurred, and no keeper must receive to exceed three dollars per day, and no keeper must be employed without an order of court, nor must he be so employed unless the property is of such character as to need the personal attention and supervision of a keeper. No property must be placed in charge of a keeper if it can be safely and securely stored, or where there is no reasonable danger of loss.''

A writ of attachment runs to the sheriff of the county in which the property of the defendant in the attachment suit is situated, and requires him to "attach and safely keep" the same or so much thereof as shall be necessary. (Rev. Codes, sec 6660.) If, in making the levy, the sheriff concludes that the property attached is of such a nature or is so situated as to require the services of a keeper, it is the duty of the sheriff to secure the necessary order, either directly or through counsel for the attaching creditor, in order that the keeper's fees may be properly included as taxable costs in the case. However, the failure of the sheriff to secure such an order will not relieve him from personal liability where he has in fact made his appointment.

The appointee is under no obligation to determine as to whether such an order has been secured. (*Foster* v. *Rhinehart* (City Ct.), 11 N. Y. Supp. 629.) It is presumed "that official duty has been regularly performed." (Sec. 7962, subd. 15, Rev. Codes.) Having performed services for the sheriff, under an appointment, the keeper looks to the sheriff for compensation, whether it comes from the sheriff directly or indirectly, and, if it transpires that the sheriff has neglected to secure an order which will entitle him to charge the expense as taxable costs in the attachment suit, the sheriff cannot evade responsibility by pleading his own dereliction, or that of his deputy. It is a maxim of jurisprudence that, "where one of two innocent persons must suffer by the act of a third, he, by whose negligence it happened must be the sufferer." (Rev. Codes, sec. 6211.)

It follows, therefore, that if through negligence of his office it is out of the power of the sheriff to recoup his loss in taxable costs, the sheriff, and not the keeper, should be the loser. His appointment of Daly, if it was his appointment, was valid as between himself and Daly, even though he did not comply with the law in first securing an order of court.

2. But it is contended that the sheriff cannot be held liable, [2] as the appointment was not made by the sheriff, but by his deputy, Coffey.

The case of *Chenowith* v. *Cameron,* 4 Idaho, 515, 42 Pac. 503, is on all-fours with this, and there the court said: "Plaintiff was put in as keeper by one Hardesty, a deputy, * * * at an agreed compensation of $3 per day, and so remained in possession and charge * * * as keeper [14 months]. * * * During all this time the defendant was sheriff of said county, and must of necessity have known of the whole transaction between his deputy and the plaintiff. To presume otherwise would be to impeach both the integrity and capacity of the sheriff. * * * It is now claimed by defendant that, as plaintiff was employed by his deputy, he [defendant] is not liable for his fees. What was this sheriff doing during the fourteen months that plaintiff was acting as keeper of said property? Is it possible the sheriff of Shoshone county would hold property of this magnitude and value under attachment for a period of fourteen months without knowing who was the keeper, or what his compensation was to be? * * * '*Qui facit per alium facit per se*' is a maxim peculiarly applicable to cases of this kind. Again, the acquiescence for a period of fourteen months by the sheriff in the service of plaintiff was a palpable ratification of the act of his deputy in employing plaintiff." The court closes the opinion with a statement that an examination of the authorities is hardly necessary, as "the universally recognized rules of common honesty are sufficient for the decision of this case."

In *Foster* v. *Rhinehart, supra,* the court said: "Now, if the deputy, in the discharge of his duty, deems it wise to employ keepers to aid him to 'safely keep' the attached property, he is,

in our opinion, acting within the scope of his employment, and the sheriff is liable for his acts. * * * The sheriff, through his deputy, employed plaintiff's assignor, and he had a right to look to the sheriff for compensation for his time and services. * * * He was justified in assuming that the sheriff, through his deputy, could properly employ him."

The supreme court of Nevada, in *Allen* v. *Ingalls,* 33 Nev. 281, Ann. Cas. 1913E, 755, 111 Pac. 36, 114 Pac. 758, followed the case of *Chenowith* v. *Cameron,* cited.

Section 350, Revised Codes, provides that "in all cases not otherwise provided for, each deputy possesses the powers and may perform the duties attached by law to the office of his principal."

It is true that in the single case cited by appellant (*Krum* v. *King,* 12 Cal. 412) it was held that a deputy sheriff who seizes property under an attachment is not authorized, by virtue of his office, to bind the sheriff by contract for the payment of keepers' fees. The opinion was written in 1859, and, after a short statement of the facts, consumes about five lines of the report and cites no authorities. It is supported neither by the weight of authority nor by those "universally recognized rules of common honesty" referred to by the supreme court of Idaho, and we find no case in which the rule there laid down is followed.

So much for the first five assignments of error, all of which refer to the questions above discussed.

3. The sixth and seventh assignments pertain to the admission of evidence as to the value of the services.

Respondent sued on *quantum meruit.* He testified to a [3] promise by the deputy that he would be paid $3 per day, and also that $3 per day was the reasonable value of the services performed. Appellant contends that this was at variance between the allegations and the proof. This position is untenable. "Where there is a special agreement, and the plaintiff has performed on his part, the law raises a duty on the part of the defendant to pay the price agreed upon, and the plaintiff may count either on the implied *assumpsit* or on the express agree-

ment. The only effect in such a case of proof of an express contract fixing the price is that the stipulated price becomes the *quantum meruit* in the case. It is not a question of variance but only of the mode of proof of the allegations of the pleading." (9 Cyc. 685, 686.) "At most, it is but a variance between the pleading and the proof which may be disregarded unless it appears that the defendant was misled by it." (9 Cyc. 749.)

Having testified to an express contract fixing the compensation [4] at $3 per day, which then became the *quantum meruit* in the case, the fact that respondent was thereafter permitted to testify that such sum was the reasonable value of the services, without being first technically qualified as an expert witness, was inconsequential.

4. The tenth assignment, next taken up for argument, is that [5] it was error, highly prejudicial to appellant, to permit the question on cross-examination of the deputy sheriff, "Was this the first caretaker you ever appointed?" on the ground that "the jury no doubt obtained the idea that the witness had the right and authority to appoint a caretaker as a matter of course." Having determined that the witness had that authority as an incident to his duty to "attach and safely keep" the property, the question was proper on cross-examination.

5. Error is assigned on the giving of certain instructions drawn in conformity with the theory of the sheriff's liability for the act of his deputy. As his liability is uncontrovertible, we find no error in instructions 1, 2 and 4.

6. Instruction No. 3 reads as follows: "The jury are instructed [6] that, even if you believe from a preponderance of the evidence that the plaintiff was in the employ of the owner, trustee, or receiver of the attached property during a part or all of the time he was in charge of such property as keeper, such employment does not preclude his right to recover from the defendant the reasonable value of his services to the defendant as keeper, not exceeding $3 per day."

It is contended that this instruction conflicts with instruction No. 2, which advised the jury that, if they found that the re-

spondent was employed as alleged, "the sheriff under such circumstances is liable to pay the keeper a reasonable compensation from the time of his appointment to the time when he surrendered possession of the attached property." This instruction correctly stated the law; but it is asserted by appellant that "the undisputed and admitted facts in this case was [were] that the same court in which this action was tried, and in which the attachment case was pending, appointed L. A. Ramage receiver of this property on April 7, 1914," and "from this testimony we find that Ramage, as an officer of the court, took immediate charge of all the property which had been attached, and appointed plaintiff as his superintendent" They further insist that "certainly Ramage could not have been in possession as receiver and plaintiff as caretaker of an attaching creditor."

The argument would be more appropriate and efficacious to a jury on the question of the amount to be awarded plaintiff than on an objection to the instruction. Under the instructions given, a jury might have found that respondent surrendered possession of the property on April 7, 1914, and was therefore entitled to compensation only from January 15 to April 7, had the jurors been of the opinion that the facts warranted such a finding.

While appellant does not formally assert that the verdict is excessive, he contends that, as the labor performed was not [7] onerous, the sum of $100 would have been ample, and that the judgment should be reduced to that amount.

While it is true that Ramage testified, "When I was appointed, under the order of the court, I took charge of all of the property of the Iron Mountain Tunnel Company," and "this property which is enumerated in plaintiff's exhibit 1 is a part of the property I took charge of as receiver," and "as receiver I appointed Mr. Daly as superintendent," on cross-examination he stated: "I took charge of the property subject to all attachments and encumbrances. I consulted counsel and found what my rights and his rights to the property were. I did not attempt to supersede Mr. Daly's authority there as caretaker."

It appears from the evidence that there was property held under writs of attachment other than that under which Daly was appointed. Horses belonging to the company were so held; while a part of the property placed in Daly's keeping consisted of hay and feed—fact conditions certainly calling for the continuance of a keeper in charge of the property which was to be conserved. This fact must have been apparent to the sheriff; for the appointment of Daly as keeper was not revoked after he was appointed superintendent of the mine in its active operation.

The jury had the advantage of seeing the witnesses on the stand in order to determine as to their credibility, as did the court, in passing upon the motion for a new trial; and evidently the jury took into consideration, in determining the amount to which respondent was entitled, the fact of his dual employment, for, although the only evidence on the subject fixed his reasonable compensation at $3 per day, the jury apparently allowed him something under $2 per day.

We find no substantial error in the record. The judgment and order denying a new trial are affirmed.

*Affirmed.*

Mr. CHIEF JUSTICE BRANTLY and ASSOCIATE JUSTICES HOLLOWAY and HURLY concur.

Mr. JUSTICE COOPER, being absent, takes no part in the foregoing decision.