NOEL, Respondent, v. COWAN et al., Appellants.

(No. 6,160.)

(Submitted September 23, 1927.   Decided October 17, 1927.)

[260 Pac. 116.]

*Animals — Bailment — Agister's Lien — Attachment — Garnishment—Sheriffs.*

Bailment—Placing Livestock in Care of Ranchman—Rights of Bailor and Bailee—Garnishment.
    1.  A contract whereby livestock is placed by the owner in the care or custody of a farmer or ranchman on shares for a definite period of time is one of bailment, under which the bailee's right to the possession of the property during that time is paramount to that of the bailor, and the latter's creditors cannot take it out of his possession under execution or attachment, but may attach it by way of garnishment.

Attachment—Garnishment.
    2.  Where property of a defendant is held by one whose possession the plaintiff has no right to disturb, garnishment, under section 9262, Revised Codes 1921, is the only method by which it may be attached.

Animals—Agister's Lien—Nature of Lien.
    3.  An agister's lien given by section 8383, Revised Codes 1921, to a ranchman or farmer to whose care livestock is entrusted, can arise only where the owner, or person in lawful possession, of the stock delivers it to the ranchman or farmer under a contract, express or implied, for that purpose.

Sheriffs—Attachment—Execution—Employment of Keeper—Court Order Necessary.
    4.  A sheriff is not entitled to be paid for his trouble and expense in taking and keeping property under attachment or execution or other process, until the allowance for the same is fixed by the court; if he takes possession and employs a keeper without an order of court he is personally liable for the keeper's compensation.

Animals—Agister's Lien—When Claimant's Lien Unfounded.
    5.  A band of sheep in the care of a ranchman under contract was attached by a creditor of the owner during the life of the contract; on its expiration the sheriff failed to take possession of the animals and the attaching creditor requested the ranchman to keep them until conclusion of his action against their owner. The creditor had judgment and the ranchman, not having been paid, brought suit against the successful creditor and the sheriff to foreclose his alleged agister's lien for pasturing the sheep for the time his contract with their owner had expired to the time of their threatened sale under execution, and to enjoin the sale. *Held,* that the animals after attachment were *in custodia legis;* that the attaching creditor was not their owner and had no right to deliver them into plaintiff's possession; that the sheriff not having had an order of court, to appoint a keeper, plaintiff could not rely upon an implied contract with him for

their keep; that therefore plaintiff's claim to an agister's lien was without a lawful basis upon which to rest, to-wit, a contract (see par. 3, above), and hence had no such lien to foreclose.

---

[1] Animals, 3 C. J., sec. 54, p. 30, n. 34. Attachment, 6 C. J., sec. 351, p. 196, n. 88. Bailments, 6 C. J., sec. 36, p. 1108, n. 96; sec. 111, p. 1149, n. 44; sec. 113, p. 1151, n. 62, 64 New. Garnishment, 28 C. J., sec. 100, p. 83, n. 50.

[2] Garnishment, 28 C. J., sec. 3, p. 19, n. 60, 61; sec. 350, p. 253, n. 34.

[3–5] Animals, 3 C. J., sec. 58, p. 32, n. 59. Attachment, 6 C. J., sec. 351, p. 196, n. 88; sec. 391, p. 211, n. 23 New; sec. 408, p. 217, n. 77 New; sec. 594, p. 312, n. 14; sec. 825, p. 371, n. 7. Bailments, 6 C. J., sec. 113, p. 1151, n. 64 New. Sheriffs and Constables, 35 Cyc., p. 1579, n. 51, p. 1603, n. 79.

*Appeal from District Court, Judith Basin County; Edgar J. Baker, Judge.*

ACTION by C. W. Noel against George W. Cowan, L. E. Black, as sheriff of Judith Basin county, Montana, L. E. Black, individually, and another. From the judgment, the defendants named appeal. Reversed.

*Mr. William W. Blackford,* for Appellants, submitted a brief and argued the cause orally.

*Mr. John J. Jewell,* for Respondent, submitted a brief and argued the cause orally.

MR. CHIEF JUSTICE CALLAWAY delivered the opinion of the court.

On July 13, 1925, George W. Cowan commenced an action against Della Noel Jones, and therein procured the issuance of a writ of attachment. The sheriff, in pursuance of the writ, on that day, served a copy of the writ upon C. W. Noel and demanded of him a statement, in response to which Noel made answer that he had in his possession and under his control under contract with the defendant certain personal property consisting of 242 grown sheep, 57 lambs and the proceeds of the sale of 1281 pounds of wool which had been sold at the time of levy. The sheriff certified that he received the share

of the defendant in the proceeds of the wool, amounting to $496.40.

The record discloses that in the year 1924 Noel entered into a contract with Mrs. Jones whereby he was to take into his possession and care for 242 sheep belonging to her, on shares, for a term ending September 1, 1926. Noel was in possession of these sheep under the contract when the attachment was made and continued in their possession until September 1, 1926. On that day he notified the sheriff and Cowan that his contract with Mrs. Jones had expired and that he would not take care of nor keep the sheep any longer and he also notified Mrs. Jones that his contract with her had expired. Noel then had in his possession 234 sheep, which were the ones he received from Mrs. Jones in 1924, less loss. Neither the sheriff nor Mrs. Jones took any affirmative action. Upon receipt of notification from Noel, Cowan, on or about September 2, requested Noel to retain and keep the sheep, promising that in the event that he, Cowan, won his suit against Mrs. Jones, which was still pending, he would pay Noel for keeping them. Thereupon Noel "agreed to and with said George W. Cowan to keep and take care of said sheep, and did in pursuance of said agreement take care of and keep said sheep" until March 21, 1927. On February 16, 1927, Cowan recovered a judgment against Della Noel Jones and on March 12 procured the issuance of an execution upon the judgment, which he placed in the hands of the sheriff. The sheriff demanded from Noel possession of the sheep which the latter refused to give, claiming an agister's lien upon them. Thereupon the sheriff posted notices that he would sell the sheep on the twenty-second day of March, 1927. The plaintiff then, on March 21, brought this action against Cowan, the sheriff, in his official capacity and individually, and Della Noel Jones. After setting up the foregoing facts, with others, plaintiff alleged that the reasonable value of herding, pasturing and feeding the sheep and performing labor in caring for them, amounted to the sum of $1,586, in which amount he claimed an agister's lien. He

prayed for judgment for the amount claimed, that the same be declared a lien upon the sheep and that the lien be foreclosed; that he be awarded a reasonable attorney's fee, and the costs of the action. He prayed that the sheriff be orderd to show cause why he should not be permanently restrained from selling the sheep under the execution.

An order to show cause having been issued a hearing was had on March 25, 1927, at which both sides to the controversy produced evidence. As the result of the hearing the court issued an order restraining the defendants from selling the sheep pending the outcome and disposition of the action. Cowan, Black as sheriff and Black individually, have appealed from the order.

The contract whereby Noel, the plaintiff, received from Mrs. [1] Jones the sheep on shares amounted to a bailment. (*Robinson* v. *Haas*, 40 Cal. 474; *Simmons* v. *Shaft*, 91 Kan. 553, 138 Pac. 614.) Where a bailee has the right to the possession of the property bailed for a definite time and for his own beneficial use, his right, until the time has expired, is paramount to any right of the bailor or his creditors, and they may not disturb him with impunity. They cannot take the property out of his possession under attachment or execution. (3 R. C. L. 135; Hale on Bailments, 186; *Smith* v. *Niles*, 20 Vt. 315, 49 Am. Dec. 783.) The property may be attached, however, subject to the bailee's rights. This procedure is by garnishment, which, while that terminology is not used, is recognized by section 9262, Revised Codes 1921. Subdivisions 3 and 5 of that section provide: "3. Personal property, capable of manual delivery, must be attached by taking it into custody, except in cases in which personal property capable of manual delivery is in the possession of a third person, and such personal property, so in the possession of a third person, may be attached in the same manner as debts or credits and other personal property, not capable of manual delivery, as hereinafter provided. * * * 5. Debts or credits and personal

property, not capable of manual delivery, and personal property in the possession of a third person, must be attached by leaving with the person owing such debt, or having in his possession or under his control such credits and personal property, or with his agent, a copy of the writ, and a notice that the debts owing by him to the defendant, or the credits and other personal property in his possession, or under his control, belonging to the defendant, are attached in pursuance of such writ.''

Wade on Attachment, section 325, says garnishment differs from attachment by seizure in two important particulars: (1) its validity does not depend upon the officer's taking possession; (2) it creates no specific lien upon the defendant's [2] property in favor of the plaintiff. Where property of the defendant is held by one whose possession the plaintiff has no right to disturb, garnishment is the only method by which it can be attached. ''It has been said in a former section hereof that by garnishment no specific lien was obtained upon the property in the garnishee's possession. Yet it cannot be said that attachment by this method creates *no* lien for that would be equivalent to saying that it was no attachment. So far as it goes in this direction, the attachment is quite as effectual by this method as by seizure and actual custody. The difference lies in the fact that by seizure the lien attaches to the thing itself, so far as defendant's interest therein exists, while by *garnishment* only defendant's interest in the thing is affected so as to prevent its transfer.'' (Wade on Attachment, sec. 338.)

The plaintiff had the lawful possession of the sheep with which the sheriff could not interfere from the date of the attachment to September 1, 1926. The sheriff did not have the right to take manual custody of them when the attachment was levied but he did have the right to take such possession when they were no longer subject to the contract of bailment, of which fact he was notified by the plaintiff. Properly, upon receiving notification from the plaintiff, he should have taken them into his possession and have placed the plaintiff or some-

one else in charge as keeper, first having obtained an order of court authorizing him to do so. But, as we have seen, he did not take any further affirmative action; the sheep remained in the possession of the plaintiff. Upon the situation presented, was the plaintiff entitled to what may be termed an agister's lien?

"A ranchman, farmer, agister * * * to whom any [3-5] * * * sheep * * * or other stock are entrusted and there is a contract, express or implied, for their keeping, feeding, herding, pasturing, or ranching, has a lien upon such stock for the amount due for keeping, feeding, herding, pasturing or ranching the same and is authorized to retain possession thereof until the sum due is paid." (Sec. 8383, Rev. Codes 1921.)

In *Love* v. *Hecer,* 67 Mont. 497, 215 Pac. 1099, in considering the above statute we said: "Clearly it was the intent of the lawmakers to give a lien on livestock only when the owner, or person in lawful possession thereof, delivered them into the custody or control of another to be cared for under contract, express or implied." The sheep were lawfully in possession of the plaintiff under contract between him and the owner only until the expiration of the contract. During the period of the contract they were attached, and while still in plaintiff's lawful possession, which the sheriff could not disturb, nevertheless they were *in custodia legis.* (*Englehart* v. *Sage,* 73 Mont. 139, 40 A. L. R. 590, 235 Pac. 787; *State ex rel. Coffey* v. *District Court,* 74 Mont. 355, 240 Pac. 667.) Cowan, the attaching creditor, was not the owner nor in lawful possession of the sheep and did not have the right to deliver them into the custody or control of anyone. It is not suggested that the owner, after the expiration of the contract, further entrusted the plaintiff with the sheep. She then had no control over nor right of disposition over them; they were *in custodia legis,* attached against her will. On the contrary, the allegation is that he kept them under his agreement with Cowan. If it be conceded that, the circumstances considered, the plaintiff in

addition to his agreement with Cowan was the keeper of the sheep under an implied contract with the sheriff, we find his claim no better. In section 4916, Revised Codes 1921, prescribing the fees to which the sheriff is entitled, we find the following: "For the expense in taking and keeping possession of and preserving property under attachment, execution, or other process, such sum as the court or judge may order, not to exceed the actual expenses incurred, and no keeper must receive to exceed three dollars per day, and no keeper must be employed without an order of court, nor must be so employed unless the property is of such character as to need the personal attention and supervision of a keeper. No property must be placed in charge of a keeper if it can be safely and securely stored, or where there is no reasonable danger of loss."

The sheriff, armed with a writ of attachment, is charged with the duty of taking into his possession property which is subject to manual custody under the writ. If he does so and employs a keeper without an order of court he is personally liable for the keeper's compensation. (*Daly* v. *Kelley,* 57 Mont. 306, 187 Pac. 1022.)

A sheriff is not entitled to be paid for his trouble and expense in taking and keeping property under attachment or execution or other process, until the allowance for the same is fixed by the court. (*Shumway* v. *Leakey,* 73 Cal. 260, 14 Pac. 841.) Fortified by the requisite order the sheriff might have asked the court to allow his expenses for keeping and caring for the sheep, as a part of his costs in the action. Without the order he may not charge the expenses so incurred by him against the property; he may not thus mulct the defendant in costs. Suppose, in a given case, the attachment was wrongful; that the sheriff without an order of court entrusted the sheep to a farmer for keeping and feeding; that the defendant won the suit and the court discharged the attachment. Would the defendant's property be liable for the keeper's compensation? Certainly not. The sheriff would be held liable personally. In the supposititious case, if the sheriff had pro-

cured an order of court for a keeper, the plaintiff in the first instance would be liable to the sheriff for the costs incurred in keeping the sheep. If the plaintiff lost the suit, he would have to bear the loss of the money he had paid to the sheriff for the costs.

As the sheriff in the instant case had not the authority to appoint a keeper, and could not make the expense of keeping the animals a charge against them, he was without authority to enter into a contract with plaintiff which would support the latter's claim to an agister's lien. It seems to be conceded by counsel for defendants that plaintiff may look to Cowan and the sheriff for his compensation.

We do not intend to leave the inference that the result would be different had the plaintiff been appointed a keeper pursuant to a court order.

As plaintiff has no recourse against the attached property, it follows that the court erred in granting the restraining order, which must be reversed, and it is so ordered.

*Reversed.*

Associate Justices Myers, Stark, Matthews and Galen concur.