(No. 4838.   January 17, 1928.)

SOUTH SIDE LIVE STOCK LOAN COMPANY, a Corporation, Plaintiff, and TWIN FALLS BANK & TRUST COMPANY, a Corporation, Plaintiff and Appellant, v. OSCAR IVERSON, DAN IVERSON, THOMAS IVERSON, H. E. HEMINGWAY, and P. D. PACE, Sheriff of Cassia County, Idaho, Defendants and Respondents.

[263 Pac. 481.]

APPEAL AND ERROR — ASSIGNMENT OF ERROR — CHATTEL MORTGAGES — FORECLOSURE — MORTGAGOR AS CUSTODIAN — EXPENSES — ASSIGNMENT OF CLAIM FOR—DOCTRINE OF ACCESSION—DEFICIENCY.

1. Assignments of error that the court erred in its conclusion of law *held* too general to be considered on appeal.

2. Assignment of error to effect that court erred in entering judgment in favor of respondents *held* insufficient and to present no question for review.

3. Mortgaged cattle remaining in mortgagor's possession after levy and seizure, by virtue of appointment as keeper by sheriff, *held* not to have remained in possession of mortgagors as affecting claim against sheriff for labor in caring for cattle or for feeding them.

4. As against mortgagors, it was competent for sheriff, after levy and seizure of cattle under chattel mortgage, to appoint one of mortgagors keeper pending sale thereof.

5. Where sheriff appointed one of mortgagors as keeper of mortgaged cattle after levy and seizure, he was primarily liable for reasonable value of labor and materials furnished in care of cattle pending sale.

6. Amount of claim against sheriff by mortgagor appointed keeper of cattle seized under chattel mortgage constitutes a debt of the mortgagees taxable as costs in foreclosure, and was deductible by sheriff from proceeds of sale, no question having been raised as to right to charge amount without prior order under C. S., sec. 3704.

7. Where mortgagor, appointed keeper of mortgaged cattle after levy and seizure, was at no time during period pending sale in possession or control of cattle as mortgagor, doctrine of accession has no application as affecting right to recover for labor and feeding.

8. Since under C. S., sec. 6382, provisions of sec. 6807 relating to collection of deficiency after sale of attached property have no application to foreclosure of chattel mortgage, sheriff on sale was under no duty to collect, as a credit due mortgagors, their claim for keeping cattle under appointment of sheriff which had been subsequently assigned to purchaser at foreclosure sale; duty of sheriff being confined to mortgaged property and not to be extended to cover such assigned claim on theory of credit belonging to mortgagors.

9. C. S., sec. 6949, relating to foreclosure of mortgages on real estate and docketing of deficiency judgment against mortgagors, does not apply in cases of foreclosure of chattel mortgages by notice and sale, and there is no means of recovering the deficiency except by action against mortgagors.

10. Mortgagee cannot complain because sheriff, after sale under chattel mortgage, accepted from purchaser as part payment an assigned claim of mortgagor for keeper's fees, though technically it was duty of sheriff to collect full amount of bid, mortgagee's sole interest being to see that sheriff properly accounted for proceeds.

11. The fact that mortgagors by contesting foreclosure made large keeper's fees necessary *held* not to affect right to recover therefor, since mortgagors had right under C. S., sec. 6385, to file contests, and mortgagee might have complained in district court in respect to accruing costs of keeping property.

12. Where finding of trial court as to reasonableness of claim filed for care in keeping cattle seized under chattel mortgage was not assigned as error, amount of claim was not before supreme court for review.

APPEAL from the District Court of the Eleventh Judicial District, for Cassia County. Hon. T. Bailey Lee, Judge.

Publisher's Note.

1. See 2 R. C. L. 161.

See Appeal and Error, 3 C. J., sec. 1476, p. 1340, n. 42½; sec. 1531, p. 1382, n. 19; sec. 1534, p. 1385, n. 53.

Attachment, 6 C. J., sec. 819, p. 370, n. 91.

Chattel Mortgages, 11 C. J., sec. 570, p. 735, n. 43 New; sec. 573a, p. 737, n. 71 New; sec. 574, p. 737, n. 72 New; sec. 575, p. 737, n. 73.

Executions, 23 C. J., sec. 225, p. 437, n. 91.

Proceedings under C. S., secs. 7305 to 7307, inclusive, in which the parties seek to determine their respective rights in and to the proceeds of a sale under summary foreclosure of chattel mortgages. From a judgment rendered, the plaintiff, Twin Falls Bank & Trust Company, appeals. *Affirmed.*

Stephan & North and S. L. Hodgin, for Appellant.

Where a mortgagor is left in possession of mortgaged chattels during foreclosure, as sheriff's keeper, his expenses for the preservation of the property, as such keeper, are not a part of the expenses of foreclosure and cannot be paid by the sheriff out of the proceeds of the foreclosure sale. (11 C. J. 713, 714, 737, secs. 521, 575; 1 R. C. L. 119, par. 6; *Schaeffer v. Giese,* 135 Wash. 464, 238 Pac. 3; *Hughes v. Edisto Cypress Shingle Co.,* 51 S. C. 1, 28 S. E. 2; *Rodgers v. Sturgis Nat. Bank* (Tex. Civ. App.), 152 S. W. 1176; Jones on Chattel Mtgs., 4th ed., sec. 785; *Howard v. Gemming,* 10 Wash. 1, 38 Pac. 748.)

It is the duty of a sheriff at a foreclosure sale to sell the property for cash and to collect the full amount of the bid from the purchaser, or resell the chattels. (*Meherin v. Saunders,* 110 Cal. 463, 42 Pac. 966; C. S., secs. 6924–6927; 10 R. C. L. 1316, sec. 112.)

A purchaser at a foreclosure sale must pay to the officer making the sale, the full amount of his bid in cash. (10 R. C. L. 1313, sec. 110; *Meherin v. Saunders, supra.*)

Upon the failure of the purchaser at a foreclosure sale to pay the full amount of his bid in cash, it is the duty of the sheriff to either resell the property or credit the mortgagees with the full amount bid and prosecute an action against the purchaser for the amount of his bid. (23 C. J. 695, secs. 695, 708, 714, and authorities cited; 11 C. J. 737, sec. 575; 22 R. C. L. 483 and 484, sec. 161; 10 R. C. L. 1315, secs. 111, 1362, 1363, 1364, secs. 151, 153; 35 Cyc. 1703, sec. 16, and cases cited; *Williams v. Corker,* 144 Cal. 468, 77 Pac. 1004; *Kreider* **v.** *Fleming,* 74 Ill. App. 237;

*Rein v. Calloway,* 7 Ida. 634, 65 Pac. 63; *Advanced Thresher Co. v. Whiteside,* 3 Ida. 64, 26 Pac. 660.)

Where the sheriff has unsatisfied execution in his hands and money of the defendants comes into his hands, it is his duty to apply the money to the payment of satisfaction of the execution. (10 R. C. L. 1362, sec. 152; *Blumaur-Frank Drug Co. v. Branstetter,* 4 Ida. 557, 95 Am. St. 151, 43 Pac. 575, and authorities cited.)

S. T. Lowe, for Respondents.

Courts may allow sheriffs such compensation for expenses in caring for property during foreclosure proceedings as are reasonable and just. (C. S., sec. 3704; *McConnell v. McCormick,* 3 Ida. 227, 28 Pac. 421; *Berry v. G. V. B. Min. Co.,* 5 Ida. 691, 51 Pac. 746; *City Bank of Leadville v. Ticker,* 7 Colo. 220, 3 Pac. 217; *Cramer v. Openstein,* 16 Colo. 495, 27 Pac. 713.)

Under the facts as stipulated the assignee of respondent could have recovered from the sheriff the amount of the expenses in the care of the cattle in controversy, and the sheriff could, in turn, have recovered the expenses from the mortgagees, had not the property sold for a sufficient sum to have paid such expenses. (*Howard v. Gemming,* 10 Wash. 1, 38 Pac. 748; 5 R. C. L., p. 471, sec. 106; 11 C. J., p. 737, sec. 575; *Lewis v. Hall,* 38 Cal. App. 329, 176 Pac. 171.)

The claim for expenses as keeper's fees, and for the care, feed and pasturage for said cattle, was a claim against the sheriff, for which the sheriff had a claim against the mortgagees, and the purchaser in so far as the claim for keeper's fees, feed, care and pasturage of the cattle was concerned was in privity with the mortgagees. (*Meherin v. Saunders,* 131 Cal. 681, 63 Pac. 1084; *Fillin v. Stewart,* 52 Wash. 682, 101 Pac. 370.)

HARTSON, Commissioner.—The controversy grows out of the foreclosure of two chattel mortgages, made, executed and

delivered by Oscar Iverson, Dan Iverson and Thomas Iverson, as copartners, to the South Side Live Stock Loan Company, and the Twin Falls Bank and Trust Company, respectively. The mortgage to the Loan Company secured $10,000, was executed January 7, 1922, and covered 448 head of mixed range cattle and some hay. The mortgage to the Trust Company secured $2,500, and advances to be made, was executed June 16, 1922, and covered 100 head of mixed range cattle as a first mortgage, and 448 head of mixed range cattle as a second mortgage subordinate to the Loan Company's lien. On April 10, 1923, after the mortgagors had refused to deliver possession to the mortgagees, affidavit for the foreclosure of each of the mortgages was placed in the hands of the sheriff of Cassia county for foreclosure by notice and sale. The sheriff thereupon took the cattle into his possession, and advertised them for sale. At the same time he appointed Dan Iverson, one of the mortgagor partners, as sheriff's keeper, and Dan Iverson remained in possession of the cattle as such keeper until March 3, 1925, when the cattle were sold under the foreclosure proceedings.

On or about April 18, 1923, the Iversons commenced two actions in the district court of the eleventh judicial district, in and for Cassia county, to contest the foreclosure .of the chattel mortgages. Temporary injunctions were issued restraining the sale of the cattle, and the actions were not finally disposed of until February 10, 1925, when they were dismissed on motion of the plaintiffs.

On October 19, 1923, an order was made and entered by consent of the parties that the sheriff be authorized to sell 185 head of the cattle for the sum of $4,685.36; and the sheriff sold 185 head for that amount. Again, on November 14, 1924, the sheriff secured an order for the sale of an additional number of cattle without notice to, or knowledge or consent of, the mortgagees, and pursuant thereto sold 29 head. On December 29, 1924, the sheriff obtained an order authorizing and directing him to pay out of the proceeds of the sales the costs and expenses, and he did

thereafter pay to Dan Iverson for Iverson Brothers, from the proceeds of the sales, the sum of $6,531.20, for hay fed to the cattle, keeper's fees, labor, etc. This order and payment were made without the knowledge or consent of the mortgagees. These particular matters, however, are not in controversy, but are given merely to explain more clearly what follows.

On February 17, 1925, the injunction suits having been dismissed, the sheriff again advertised the remaining cattle for sale for cash at public auction, and on March 3, 1925, sold 422 head, with their sucking calves, to H. E. Hemingway, one of the respondents, who was the highest and best bidder, and struck them off to him for the sum of $12,554.50. At the time of the sale, Dan Iverson had an additional claim against the sheriff in the sum of $6,109 for hay, pasture, keeper's fees, labor, and other items which had been furnished him by the partners, mortgagors, and which had not been paid. Prior to the sale, the partners sold, assigned and transferred to respondent Hemingway their claim for these expenses, and Hemingway deducted from the purchase price the amount of the assigned claim, tendered the sheriff the sum of $6,445.50, as balance of the price, and demanded a bill of sale. The sheriff at the time refused to deliver a bill of sale, but after having been secured, by Hemingway, by the deposit of an indemnity bond for $3,500, and a certificate of deposit for $2,600, and the payment of $6,445.50 in cash, the sheriff delivered the bill of sale to Hemingway. The mortgagees, however, demanded that the sheriff credit on the notes and mortgages the full amount of the purchase price, and later in writing demanded that he account to them for the entire proceeds of the sale. The sheriff offered to pay them the cash, to wit, $6,445.50, after deducting the assigned claim of Dan Iverson, but they declined the offer. The mortgagees agreed between themselves as to the division of the proceeds, but the sheriff being unable to determine how to make the distribution, the cause was submitted, upon stipulation of all parties, to the district court, in and

for Cassia county. Thereafter the court made findings of fact, conclusions of law, and decreed in favor of respondents. The findings are not attacked, but appellant assigns as error each of the conclusions of law, numbers 1 to 5 inclusive, and the judgment. The court concluded that respondent Hemingway was the owner and holder of the assigned Dan Iverson claim for keeper's fees, and that no part thereof had been paid; that the bill for keeper's fees, amounting to $6,109, is a valid and just claim against the sheriff for keeping the cattle prior to the sale; that the bill is part of the sheriff's expenses incurred in foreclosing the chattel mortgages, and the sheriff is entitled to retain the amount from the proceeds of the sale before turning them over to the mortgagees; that the sheriff is authorized to accept from respondent Hemingway, as bidder, the amount of the keeper's bill, and that the balance of the price, to wit, $6,445.50, should be applied on the notes as agreed between the mortgagees, and that the sheriff should release and surrender to respondent Hemingway the surety bond and certificate of deposit hereinbefore described.

[1, 2] Appellant's first assignment of error is: "The court erred in its conclusion of law No. 1." The second, third, fourth and fifth, directed to conclusions Nos. 2, 3, 4 and 5, are similarly phrased. These are not proper assignments of error, because they are too general to be considered. (*Abernathy v. Peterson,* 38 Ida. 727, 225 Pac. 132.) The errors relied upon, however, are made sufficiently clear in the body of appellant's brief. (*Berg v. Carey,* 40 Ida. 278, 232 Pac. 904.) The sixth assignment is: "The court erred in entering judgment in favor of respondents." This is also insufficient and presents no question for the courts to review. (*Keltner v. Bundy,* 40 Ida. 402, 233 Pac. 516.)

[3–7] It is urged by appellant that Dan Iverson, being one of the mortgagors, could have no legal claim against the sheriff for labor in caring for the cattle, or for feeding them Iverson Brothers' hay, the theory advanced being,

that where labor and new material have been added to mortgaged articles by the mortgagor, the value thereof belongs to the mortgagee under the doctrine of accession. It was stipulated, and found by the trial court, that after receiving the affidavits, notice and instructions, the sheriff, under and by virtue of the foreclosure proceedings, took the cattle into his possession, and advertised them for sale according to law; and that at the same time he duly and legally appointed Dan Iverson as keeper, and that the latter remained in possession of the property as keeper until the sale. In the face of this stipulation, and the finding, it cannot now be urged that the cattle were, at any time after levy and seizure, in possession of the mortgagors, or either or any of them. As against the mortgagors, it was competent for the officer to appoint one of their number keeper. (23 C. J. 437, 473, 474.) Indeed, appellant makes no contest as to the legality, necessity or propriety of the appointment. Having appointed Dan Iverson as keeper, the sheriff was personally liable to him for the reasonable value of the labor and materials furnished. (*Daly v. Kelley,* 57 Mont. 306, 187 Pac. 1022.) The trial court found that the labor and materials. furnished by Dan Iverson were reasonably worth the sum of $6,109; that all the expenses were incurred while the cattle were being held in the legal and lawful possession of the sheriff, and that the claim was a just and legal claim against the sheriff. No question is raised by appellant as to the reasonableness or necessity of the charges, nor as to the sheriff's right to charge the amount as taxable costs without a prior order, under C. S., sec. 3704. The whole amount was therefore a debt of the mortgagees, taxable as costs in the foreclosure, and was deductible by the sheriff from the proceeds of the sale, before paying the mortgagees. The law authorized the sheriff to collect all his fees in advance, and if he did not do so in this case, the appellant simply owed for such services and expenses, the relation of debtor and creditor existed between them, and execution might issue therefor.

(*Howard v. Gemming et al.*, 10 Wash. 1, 38 Pac. 748; *City Bank of Leadville v. Tucker*, 7 Colo. 220, 3 Pac. 217; *Naylor v. Vermont Loan and Trust Co.*, 6 Ida. 251, 55 Pac. 297; 6 C. J. 370; C. S., secs. 3712, 3716.) The mortgagors were at no time during the period in question in possession or control of the cattle, and the doctrine of accession has no application. (*Schafer, Sheriff, v. Giese et al.*, 135 Wash. 464, 238 Pac. 3; *Samples v. Rogers*, 134 Ky. 93, 119 S. W. 199; *Beck v. Lavin*, 15 Ida. 363, 97 Pac. 1028.)

[8, 9] The next question raised by the appellant is as to the right of the sheriff to accept the assigned claim as part payment of the Hemingway bid. It is suggested in this regard that it was the duty of the sheriff to collect, as a credit due Iverson Brothers, the claim of Dan Iverson for keeper's fees, as provided in C. S., sec. 6807. This section relates to collection of deficiency after sale of attached property. C. S., sec. 6382, relating to foreclosure of chattel mortgages by notice and sale, provides that seizure, notice, and sale of mortgaged chattels shall be conducted as under execution. The statutes relating to sale of attached property are not carried into the law relating to summary foreclosure of chattel mortgages by reference or otherwise, and have no application thereto. C. S., sec. 6949, relating to foreclosure of mortgages on real estate, and docketing of deficiency judgment against the mortgagors, does not apply in cases of foreclosure of chattel mortgages by notice and sale, and there is no means of recovering a deficiency except by action against the mortgagors. (*Advance Thresher Co. v. Whiteside*, 3 Ida. 64, 26 Pac. 660.) C. S., sec. 6807 therefore has no application here. The duty of the sheriff was confined to the mortgaged property, and could not be extended to cover the assigned claim of Dan Iverson on the theory of a credit belonging to Iverson Brothers.

[10] The appellant, as mortgagee, having become obligated to the sheriff for the expense of keeping the property pending foreclosure and sale, was entitled, under the law, to have retained out of the proceeds of the sale a suffi-

cient sum to repay such expense. (11 C. J. 737.) No doubt it was technically the duty of the sheriff to collect from the bidder, Hemingway, the full amount of his bid at the sale, but it does not lie in appellant to complain. Its sole interest was to see that the sheriff properly accounted for the proceeds. The claim of Dan Iverson for keeper's fees was good in the hands of Hemingway, as it was good in the hands of his assignor, and the sheriff was in duty bound to pay it. Appellant is not injured by failure of the sheriff to perform the empty ceremony of collecting from Hemingway the entire sum, and then immediately repaying to Hemingway the amount of the claim. That amount, considered as money in the sheriff's hands, does not belong to appellant, but to the sheriff, in liquidation of its obligation to him for keeper's fees and expenses for which, as to him, it was always liable. The mortgagors cannot complain, because they were credited on the mortgages with the full net amount of the sale, and appellant cannot complain because it received the full net amount to which it was entitled out of the proceeds.

[11, 12] It is also argued by appellant that the Iversons, by contesting the foreclosures, made the large keeper's fees necessary; but this does not follow. The mortgagors had the right to file such contests. (C. S., sec. 6385.) The record is silent as to the reason for the long delay in disposition of these actions, but in any event appellant had its right to complain to the district court in respect to the accruing costs of keeping the property, and it did not do so. It is now too late to object, since the finding of the trial court that the amount is reasonable is not assigned as error, and therefore the amount of the claim is not before us for review.

There being no error, we recommend that the judgment be affirmed, with costs to respondents.

Babcock and Adair, CC., concur.

The foregoing is approved as the opinion of the court and the judgment is affirmed.   Costs to respondents.

Wm. E. Lee, C. J., and Budge, Givens and Taylor, JJ., concur.

T. Bailey Lee, J., disqualified.