GIOVANETTI, APPELLANT, v. SCHAB, RESPONDENT.

(No. 2,826.)

(Submitted May 18, 1910.  Decided May 23, 1910.)

[109 Pac. 141.]

*Landlord and Tenant—Oral Leases—Nature of Occupancy—
Evidence—Trial—Amendment of Pleading—Discretion.*

Trial—Pleadings—Amendment—Discretion.
    1.  The allowance of an amendment to defendant's answer, during trial, was within the sound legal discretion of the district court; in the absence of a showing of abuse thereof, its action will not be disturbed on appeal.

Same—Amendment of Pleadings—Objection—When Too Late.
    2.  An objection to the allowance of an amendment of the answer, in an action for unlawful detainer, on the ground that it was not verified, not made until after the amendment had been allowed, was too late.

Landlord and Tenant—Oral Leases—Nature of Occupancy—Evidence.
    3.  Evidence in an action for rent *held* to justify a verdict that defendant's occupancy was under an oral lease from year to year, and not under one from month to month; plaintiff could not, therefore, rightfully increase the amount of the rental during the term of such lease.

*Appeal from District Court, Silver Bow County; Jeremiah J. Lynch, Judge.*

ACTION by Celestina Giovanetti against W. E. Schab.  Judgment for defendant, and plaintiff appeals from an order denying her a new trial.  Affirmed.

In behalf of Appellant, there was a brief and oral argument by *Mr. John A. Smith.*

*Messrs. Kirk, Bourquin & Kirk* submitted a brief in behalf of Respondent, and *Mr. W. R. Kirk* argued the cause orally.

MR. JUSTICE SMITH delivered the opinion of the court.

This case originated in a justice of the peace court in Silver Bow county.  It comes to this court on appeal from an order of the district court of that county refusing to grant the plain-

tiff's motion for a new trial, after judgment entered upon the
verdict of a jury in that court. The object of the action was
to recover $200 as rent for a certain store building situated on
East Park street, in the city of Butte, for the month begin-
ning October 10, 1908, and ending November 10, 1908, together
with the possession of the building. The building, however, was
vacated by the defendant before the trial, so that the only ques-
tion at issue was whether the plaintiff was entitled to recover
the rent.

It is alleged in the complaint that the plaintiff, by an oral
lease made on or about the tenth day of July, 1908, leased and
let to the defendant the said building or storeroom for one
month, and from month to month thereafter, at a rental of $40
per month, payable in advance; that on September 11, 1908,
the terms of the lease were, by written notice served on defend-
ant, changed, and the rent increased to $200 per month, the
change to take effect October 10, 1908; that defendant con-
tinued in possession of the premises, and on October 13, 1908,
plaintiff demanded the increased rental or the possession of the
premises, but defendant failed to vacate the storeroom or pay
the rent. The defendant by answer admitted being in posses-
sion and the service of the two notices mentioned in the com-
plaint, and denied all other allegations thereof. He alleged
affirmatively that on the tenth day of July, 1906, he hired the
building in controversy from one Sam De Poli, a prior owner,
at a monthly rental of $40, for a period of one year; that De
Poli, on January 31, 1907, conveyed the premises to one Golu-
bin, subject to said lease, and Golubin agreed that defendant
should retain the possession of the premises upon the same
terms and conditions; that plaintiff accepted rent for the months
of July, August and September, 1908, at the rate of $40 per
month, and was tendered the same sum for the month beginning
October 10, but refused to accept the same. These issues were
made up in the justice of the peace court. During the course
of the trial in the district court the defendant was allowed,
over plaintiff's objection, to amend his answer by interlinea-

tion so as to show that on July 11, 1908, he had entered into an agreement with Gobulin by which he (defendant) might remain in the possession of the building for a year from that time, upon the same terms as those under which he had previously occupied it.

The allowance of the amendment was a matter within the sound legal discretion of the district court, and we find no abuse of such discretion. It is, however, argued by counsel for the plaintiff that, as the statute requires the pleadings in actions of forcible entry and unlawful detainer to be verified, this amendment was improperly allowed, because not verified. The objection of want of verification was not made, however, until after the order allowing the amendment had been entered. It was then too late. In any view of the matter, we do not think the plaintiff suffered prejudice from the action of the court, for the reason that the amendment of the answer was unnecessary.

The testimony on the part of the plaintiff tended to show that when her agent, H. Giovanetti, collected of the defendant the sum of $40 as rent for said premises in the month of July, he then informed the defendant that the rent for the succeeding months would be at the rate of $50 per month; that the defendant assented thereto; that the latter, however, refused to pay $50 the following month, and she finally accepted $40 as the rent for the month of August; that on September 11 the defendant again refused to pay $50, whereupon he was served with notice that from and after October 10 the rent would be $200 per month; and that on the eleventh day of October the defendant tendered the sum of $40 as rent, which was refused.

The defendant testified: "My first dealing for that building was on the tenth day of July, 1906, and was with Sam Depolie. My lease from Mr. Doublin was the building. It was a year to year lease. He said I could have the building as long as I paid him $40 on it; he would give me the lease every year from year to year at $40 per month. My agreement with Mr.

Doublin was to rent the building from year to year at $40 per month. I leased the building from Mr. Doublin. He said he would lease the building to me at $40 per month on a year to year lease, and I could have the building as long as I paid the rent. Mr. Goublin bought it in January, 1907. About July 10 he said he had bought the place from his father in law, Mr. Doublin, and he said that everything would go along as usual. He said that his father in law had spoken to him in regard to the rent being $40 per month and would continue on so. I said all right. Mr. Doublin said that they would continue to rent me the building at $40 per month. He said that the lease would continue on the same as it had been with the old gentleman, at $40 per month, and the lease was on the building. Q. What agreement did you have with Gobulin after having held the lease after July 10, 1908, for one year? A. Why, the agreement was as long as—I could continue over from year to year as long as I continued to pay the rent of $40 per month. I saw Mr. Gobulin along on or about July 10, 1908. I was negotiating for the purchase of this place. I paid down $200, and I made an agreement to buy. I had a talk with Mr. Giovanetti on July 13, about noon. He said he bought the building and wanted the rent and everything as it had been. Now, these are his words, he says: 'That man told me that he intended to vacate. But,' he says, 'you can stay where you are at $40 per month.' He said that the rent would continue the same and I could stay with the same agreement, at $40 per month. Mr. Gobulin said he had sold the building to Mr. Giovanetti, on the 11th or 13th of July. I made an agreement with Mr. Guibilon for the purchase of this building on May 27, 1908. At that time I paid him down $200. After the month of May, 1908, when I had entered into the contract to purchase this building, I remained in possession of it after that, under the agreement to buy it. The reason that I did not complete my payment and make the purchase as I had agreed to do was because he sold it to Mr. Giovanetti. I told Mr. Giovanetti of the lease I had with Mr. Guibilon, when I paid him

the first month's rent.    At that time when I gave the check for $40 I told him of the agreement I had with Guibilon.    After my contract of purchase and before July 10 or 11 I did not enter into any agreement with Mr. Guibilon for a lease of the building; but I had an agreement to buy, and I expected to buy the building.    I forget whether it was the first or second check or payment that Giovanetti spoke about the $50, and I told him that I had a year to year lease at $40.    He said that I could have the building at $40 a month, just the same as with Guibilon; that I could stay there as long as I wanted it at $40 a month.    I did not pay Guibilon any rent after I had made the agreement with him for the purchase of the building. When I made the agreement to purchase I paid him from the 10th of May to the 10th of June.    I did not pay on the 10th of July on account of the agreement I had to buy the building.    Q.    Did you ever get that money ($200) back, or any part of it?    A.    No.    (Plaintiff's Counsel:)    I object to that as immaterial and move to strike out the answer.    A.    They kept $200 of my money, and they kept it, and now they say I have not paid the $40 for the month of July.    (Plaintiff's Counsel:)    I object to the statement as being improper, and move to strike it out.    (The Court:)    Overruled"—to which ruling the plaintiff excepted.

H. Giovanetti, the agent of plaintiff, stated that the defendant never told him that he had a lease from Mr. Guibilon at $40 per month, for one year from the 10th of July, 1908; and that he never stated to the defendant that he could remain in possession as long as he wanted to, at the rate of $40 per month under the same terms as he had with Mr. Guibilon.

Guibilon testified that he did not lease the premises to the defendant on the tenth day of July, 1908, for one year at the monthly rental of $40 per month, and that he never at any time leased the premises to the defendant for the term of one year. He also testified that he knew of no lease from Mr. Doublin, the prior owner, to the defendant, and that he never told him that he had such a lease.

The parties to the action and the persons mentioned in the testimony are evidently of foreign extraction, and we find what is apparently the same name spelled in different ways in the record. But we believe we are correct in saying that the first owner of the building was Doublin (De Poli, Depolie), the father in law of Guibilon (Golubin, Gobulin, Goubilin, Goublin), the second owner, who transferred to plaintiff.

It is contended by counsel for the appellant that the matter of the agreement between defendant and Guibilon, for the purchase of the building, in May, 1908, should not have been brought to the attention of the jury; but we find no timely objection to the questions which called out the testimony. We regard the evidence on that point as immaterial, and think the court was correct in limiting the cross-examination on the subject. However that may be, appellant now maintains that the agreement to purchase terminated any lease the defendant may have had up to that time. He may not make use of the testimony for this purpose and still insist that it has no proper place in the record. We shall refer to the contention hereafter.

It is urged that the evidence is insufficient to justify the verdict. Appellant's position is that the testimony discloses a lease from month to month, which could be terminated or changed on fifteen days' notice; while respondent argues that there is testimony to warrant the jury in finding that defendant had a lease for a year or from year to year.

It may be conceded that, if the defendant held under a lease from month to month, the plaintiff was entitled to recover and the jury should have rendered a verdict in her favor in accordance with instruction No. 1, wherein the court instructed them to that effect. Section 5228, Revised Codes, reads as follows: "A hiring of real property, other than lodgings and dwelling-houses, in places where there is no usage on the subject, is presumed to be for one year from its commencement, unless otherwise expressed in the hiring." The property in question was not a lodging or dwelling-house. There is no testimony of any usage on the subject. Therefore, when defend-

ant entered on July 10, 1906, according to his testimony, his lease ran for at least a year from that date. Indeed, he says his agreement with Doublin was "to rent the building from year to year at $40 per month." In January, 1907, before the first year had expired, Guibilon purchased the property from Doublin and told defendant that the lease would continue on the same as it had been with Doublin, at $40 per month. At some time during the ownership of Guibilon (it does not appear exactly when), the latter agreed with defendant that "he could continue over from year to year, as long as he continued to pay the rent at $40 per month." It appears that on May 27, 1908, defendant was still in possession under Guibilon, paying rent at the same rate, and this must have been in the second year of his tenancy under the latter. If the original agreement with Guibilon was made in January, 1907, the second year of the lease would not expire until January, 1909; and, if it was made later, then it would expire at a correspondingly later date. In any event, the second year would cover the month from October 10 to November 10, 1908. When plaintiff purchased the property, her agent, who appears to have had charge of its management, told defendant that "he wanted the rent and everything as it had been." He said that "he could stay with the same agreement at $40 per month." Defendant testified: "I told Giovanetti of the lease I had with Guibilon when I paid him the first month's rent. * * * I told him I had a year to year lease at $40. He said that I could have the building at $40 a month just the same as with Guibilon; that I could stay as long as I wanted it at $40 a month." It is true that this testimony was all contradicted; but we think there was a substantial conflict, and the jury evidently believed it. Assuming that it is true, the third year of defendant's lease had not expired in October, 1908, and plaintiff could not rightfully increase the amount of the rental as she attempted to do. (See *Brill* v. *Carsley*, 2 Cal. App. 331, 84 Pac. 57.)

It is also urged that the evidence shows that defendant's lease from Guibilon had been abandoned by mutual consent,.

before the building was sold to plaintiff, and that at that time the defendant was holding under a contract to purchase. We do not think the evidence justifies this conclusion. If the defendant's evidence is true, he did not so understand, because he informed plaintiff's agent, immediately after the purchase by her, that he had a lease from year to year, and the agent consented that the same might continue in force.

The order of the district court is affirmed.

*Affirmed.*

MR. CHIEF JUSTICE BRANTLY and MR. JUSTICE HOLLOWAY concur.