BERYL GAITHER, Plaintiff and Respondent, v. RICHARD-
SON CONSTRUCTION CO., Defendant and Appellant.
MARGARET MULLINS, Plaintiff and Respondent, v.
RICHARDSON CONSTRUCTION CO., Defendent and Ap-
pellant.

No. 11522.
Submitted Feb. 13, 1969.
Decided March 28, 1969.
452 P.2d 428.

Anderson, Symmes, Forbes, Peete & Brown, Weymouth D. Symmes, (argued), Sam E. Haddon, (argued), Billings, for appellant.

Longan & Holmstrom, Franklin S. Longan, (argued), Billings, F. F. Haynes, Forsyth, for respondent.

MR. JUSTICE CASTLES delivered the Opinion of the Court.

This is an appeal by defendant hereinafter referred to as the appellant, from judgments entered on jury verdicts for the plaintiffs and an order denying a motion for a judgment notwithstanding the verdict or in the alternative for a new trial.

The plaintiffs, hereinafter referred to as the respondents, Beryl Gaither and her mother Margaret Mullins, brought these actions for personal injuries against the appellant, Richardson Construction Company. Both respondents sustained injuries in a May 27, 1964 automobile accident near Hysham, Montana on a section of Interstate 94 under construction by the appellant.

The respondents, residents of Hood River, Oregon, left their home on the morning of May 26, 1964 intending to visit a sick relative in the vicinity of Hysham, Montana. Neither respondent had ever been in Montana before. All of the driving was done by the daughter, Mrs. Gaither, although expenses for the trip were shared by both. Travel to Montana was continuous with intermittent rest stops along the way.

At approximately 5:00 a. m. on May 27, respondents arrived at the Prairie Diner located east of Custer, Montana. They

asked the waitress there for directions to Sarpy Creek, their destination. The waitress told them to go to Bighorn, turn right and go up Tallack Creek until "they got over quite a ways and they would have to make a left turn to get to Sarpy."

It was approximately 5:30 a.m. and daylight when the respondents left the Prairie Diner. They turned right at Bighorn and drove south on a gravel road until they reached the Bighorn overpass on Interstate 94. There was a sign identifying the Interstate project just north of the overpass. The respondents crossed the overpass and turned left down the ramp onto the Interstate. There were no barricades or signs indicating that the road was closed at this point.

Interstate 94 in that vicinity was built in three sections. The western section began just east of the Prairie Diner and extended about three and one-half miles beyond the Bighorn overpass. This section was already completed and the respondents traversed the three and one-half miles on paved road. The center section was under contract with Stanley H. Arkwright and in the last stages of dirt construction. Some of the testimony indicated that there was a "Road Closed" sign on a single barricade at the beginning of this section. Respondents claimed that there was no barricade, however. At the eastern end of this center section there was a sign stating "Slow, 10 m.p.h., Bump."

The Richardson project began at this point and had been paved the day before the accident occurred. On this portion of the road there was another interchange, which is called the Hysham overpass. There were barricades in place at the ramps of the Hysham overpass leading to the side road. The respondents, however, did not use the ramps and continued on the main highway. Testimony about any barricades at the western approach to the Hysham interchange is conflicting. The respondents stated that there were no barricades. The highway patrolman testified that there were three barricades staggered behind each other just by the "off ramp." The engineer and

foreman of the project did not remember the location of the barricades on the date of the accident, yet both thought that there were some in the vicinity. The sheriff testified that the barricades were about halfway across the road, but apparently he had been no nearer than a block away, since he had taken another route to the accident scene.

The respondents continued on the Interstate until they "dropped off" the eastern end. The drop-off was abrupt and from 20 to 30 feet down. It is clear from the testimony that there were no signs or barriers on the oiled portion of the road at the drop-off. The barricades were on the shoulders at the side of the road, evidently not put back in place after the blacktop surface was put on the day before.

The issues presented for review are: (1) whether the district court erred in refusing to grant the appellant's motion for a directed verdict; and (2) whether it was reversible error for the court to give certain conflicting instructions.

█ █ Appellant contends that the respondents were wrongfully upon a highway closed to the public and, because they were trespassers or at most bare licensees, the appellant breached no duty owed to them. If the respondents were trespassers on the construction project, the appellant owed them no duty except to refrain from intentional or wanton acts which might injure them. If they were bare licensees, appellant argues that its only duty was to refrain from willful and wanton acts of misconduct, or to refrain from active as distinguished from passive acts of negligence. Since appellant contends there is no evidence that the Richardson Construction Company was guilty of willful or wanton acts, or active negligence, the motions for a directed verdict should have been granted.

Respondents argue that to leave a precipitous drop-off at the end of a broad paved highway without barricades or other warnings amounts to willful and wanton acts of negligence. Heretofore we commented that evidently the barricades had not been put back in place after the blacktop surface was

applied the day before. This might indeed amount to willful and wanton negligence and a jury might so find, but we need not rely on this alone.

Appellant's argument is based upon the assumption that the respondents were wrongfully on the highway. However, highways are built for automotive traffic and the respondents were rightfully there unless warned to stay off. It was for the jury to decide whether the respondents had adequate warning that the road was closed. In the case of Ulmen v. Schwieger, 92 Mont. 331, 350, 12 P.2d 856, 861, the plaintiffs did not follow the detour signs and ran into an unguarded ditch extending across the highway under construction. This Court noted that the plaintiffs "* * * had the right to act on appearances without becoming trespassers * * *."

The evidence shows that the respondents thought they were following the directions given by a local resident and got on the new road at a place where there were no signs or barricades. They passed a car on this road and traveled some 10½ miles before they went off the end. The highway had been traveled. Traveled portions went around barricade signs even according to those who testified that there were barricade signs. The evidence was conflicting, but those who testified about barricades never did place them more than halfway across the traveled portion. Even then, the appellant relies, not on his own contractual obligations requiring safety devices, warnings and barricades, but on those erected by contractor Arkwright on the westerly sections of the new highway. At best, we comment, warning signs were conspicuous by their absence; and failure to rebarricade the drop-off at this most dangerous spot of the entire section was for the jury to weigh. Even if they did drive around a barricade at the Hysham interchange, and the evidence is conflicting on this point, that fact would not go to the issue of whether they were trespassers or licensees, but whether they were contributorily negligent.

Since the respondents made a sufficient showing of negligence on the part of the appellant to take the case to the jury, the court did not err in denying appellant's motions for a directed verdict.

In its second argument, appellant contends that some of the instructions given are conflicting and created reversible error on (1) the duty of care owed by the appellant, and (2) the defense of contributory negligence.

Defendant's offered instruction No. 14 was given as court's instruction No. 13. This instruction reads:

"You are instructed that each of the plaintiffs were at most licensees using the road under construction. The only duty owed by the defendant to the plaintiffs as licensees was to refrain from willful or wanton injury. Under such circumstances, from a mere failure to exercise ordinary care no liability arises. The licensee assumes the risk incident to the condition of the premises and the activities regularly carried on there."

The court also gave plaintiffs' offered instructions as instructions Nos. 11 and 6 respectively. These instructions state as follows:

"You are instructed that in deciding whether Richardson Construction Co. exercised reasonable care, the jury will consider all of the facts proved and say whether the conduct of the defendant, Richardson Construction Co. was that of a person of ordinary prudence and discretion under such circumstances. In judging whether the defendant, Richardson Construction Co. was guilty of neglicence, its conduct should be considered, not only with reference to the facts of which it had actual knowledge, but in view of what was reasonably likely to happen if the barricades at the end of the road were not in place."

"Every person is responsible for injury to the person or property of another, caused by want of ordinary care or want of such ordinary care or skill. Such want of ordinary care or

skill exists when there is a failure to do that which a reasonable and prudent person would ordinarily have done under the circumstances of the situation, or doing what such person under the existing circumstances would not have done."

There is a conflict between instruction No. 13 and instructions Nos. 11 and 6. One states that the appellant owed to the respondents only the duty to refrain from willful and wanton injury, while the others impose upon the appellant the duty to exercise reasonable care. The appellant cannot claim prejudicial error, however. Instruction No. 13 was offered by the appellant, and although mandatory in form, the jury could have followed it only if they considered the appellant's conduct "wanton".

This instruction focused upon the status of the injured parties to determine the duty owed by the appellant and no authority has been cited where the real property law of licensees would apply in a case arising out of the use of highways. Furthermore, as was pointed out above, it was for the jury to decide whether the respondents were negligently driving upon the highway.

Appellant also contends that the instructions given on the issue of contributory negligence are conflicting. Instructions Nos. 15 and 16 state respectively:

"Contributory negligence is such an act or omission on the part of a plaintiff amounting to the want of ordinary care, as, concurring or cooperating with the negligent act of the defendant, is a proximate cause or occasion of the injury complained of."

"Contributory negligence is negligence on the part of a claimant which contributed as a proximate cause to her injury."

Instruction No. 21, which appellant objected to on the grounds that it was not a correct statement of the law, reads as follows:

"You are instructed that if you find both defendant Richardson Construction Co. negligent and plaintiff Gaither contribu-

torily negligent, this fact does not relieve the defendant, Richardson Construction Company, from liability, unless the defendant Richardson Construction Company, shows by a preponderance of the evidence that such contributory negligence would have produced the injury independent of the defendant Richardson Construction Company's negligence, therefore, in this case, if you find that the defendant Richardson Construction Company was negligent in failing to have barricades at the end of the highway where the plaintiffs were injured, and if you find that the plaintiff Gaither was contributorily negligent in failing to heed or obey the signs west of the point of the accident, the defendant is not relieved from liability toward the plaintiffs unless the defendant shows by a preponderance of the evidence that the failing to heed the signs independent of defendant's failure to put barricades at the end of the dropoff would have produced the injury to both Gaither and Mullins."

In this case there are two acts independent of each other which could have produced the injury, the failure to place barricades by the appellant and the failure to heed signs by the respondents, assuming that the jury found that they should have. Although instruction No. 21 was confusing and not within the confines of the law on contributory negligence, evidently the purpose was to require the jury to make an independent determination of whether the respondents' negligence was a proximate cause of the accident, yet the requirement of proximate cause is not mentioned. The rule comes from Fulton v. Chouteau County Farmers' Co., 98 Mont. 48, 37 P.2d 1025, where this Court stated:

"* * * for it is not enough to show that the plaintiff was negligent but, to bar a recovery, such negligence must have directly contributed to the injury at the time it was inflicted; it must have been a proximate cause of the injury."

This instruction, however, did not stand alone, but was to be considered along with the other instructions which were given.

Instruction No. 19, for example, said in effect that if the driver's failure to obey the sign was a proximate cause of the accident and the absence of the barriers a remote cause, then the verdict should be for the defendant, but if the jury should find that the absence of the barricades was the proximate cause of the accident and the driver's failure to obey the signs was a remote cause, the verdict should be for the plaintiffs.

The appellant must show that instruction No. 21 was prejudicial to it before it constitutes reversible error. Interstate Power Co. v. Anaconda Copper Min. Co., 52 Mont. 509, 513, 159 P. 408. Moreover, if the jury followed the instruction which required the respondents to prove willful or wanton conduct in order to recover, and considered the absence of barricades as such conduct, upon that view the jury would not even have had to consider contributory negligence. On the other hand, the negligence of the plaintiffs could have been considered by the jury as remote, and the problem posed by instruction No. 21 is not reached. In Dahlin v. Rice Truck Lines, 137 Mont. 430, 436, 352 P.2d 801, this Court held that where the plaintiff had a verdict notwithstanding his negligence, it was supported on the theory that the jury did not consider it the proximate cause.

The instructions taken as a whole could not have prejudiced the substantial rights of the appellant. For the above reasons, the judgments are affirmed.

MR. CHIEF JUSTICE JAMES T. HARRISON and MR. JUSTICES HASWELL, JOHN CONWAY HARRISON and BONNER, concur.