No. 84-561

IN THE SUPREME COURT OF THE STATE OF MONTANA

1985

_____

BILL HILL,

          Plaintiff and Appellant,

   -vs-

TURLA TURLEY and DELIA TURLEY,
husband and wife,

          Defendants and Respondents.

_____

APPEAL FROM:  District Court of the Fourteenth Judicial District,
In and for the County of Mussel shell,
The Honorable Roy Rodeghiero, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        Whalen & Whalen; Michael J. Whalen, Billings,
Montana

    For Respondent:

        Ask & Pratt; Thomas M. Ask, Roundup, Montana

_____

Submitted on Briefs: May 23, 1985

Decided: December 5, 1985

Filed:    DEC - 5 1985

_____
Clerk

Mr. Justice John C. Sheehy delivered the Opinion of the Court.

Appeal by Bill Hill from a judgment based on jury verdict against him entered in the District Court, Fourteenth Judicial District, Musselshell County.

The principal issues in this case are whether an oral grazing lease for a term longer than one year is invalid under § 28-2-903, MCA, and whether Bill Hill was entitled to a directed verdict for conversion of his cattle by Turleys under a purported agister's lien. The judgment was against Bill Hill on both of these issues and we affirm the judgment.

Turla and Delia Turley own a ranch in Musselshell County consisting of approximately 4 1/2 sections of timber and grasslands with a small acreage of dry hay land. In March 1982, Hill and the Turleys met to discuss a proposed grazing lease of the Turley ranch by Hill. They entered into an oral lease agreement, the terms of which are controverted.

Hill testified that he wanted a three year lease but the Turleys would agree only to a two year lease. He said he left a copy of a lease form with the Turleys to fill in and sign. Neither that form nor any other writing was executed by the parties.

The Turleys contended that Hill agreed to pay $12,000 annually for a three year lease but that they would accept the rental in monthly payments so long as the entire first year's balance was paid before the second year of the lease commenced. Turleys also contended that Bill Hill agreed to care for all the livestock, pay for the electricity to run the pumps on the well, and the fences.

Hill moved his livestock onto the Turley ranch on or about May 1, 1982. During the 1982-1983 season, Hill ran approximately 200 head on the ranch. Most of the stock belonged to third parties, including 50 head that belong to Turleys. The Turleys, after agreeing to the lease, had answered an advertisement for grazing for their own cattle, and discovered the advertiser to be Hill. The Turleys paid Hill $13 per month per head to graze their stock on their ranch during the summer of 1982.

Hill paid the total rental payments due during the year beginning May 1, 1982 and ending May 1, 1983, though the payments were not made promptly at the beginning of each month.

Hill ran cattle on the ranch during the summer and fall of 1983, and on October 1, 1983 terminated the lease. He paid Turleys $5,000 to cover the period from May 1, 1983 to September 30, 1983. On termination, Turleys allowed Hill to remove the cattle belonging to third parties from the ranch when Hill terminated the lease, but would not allow Hill to remove his own cattle. Turleys asserted an agister's lien on Hill's cattle.

Hill did not live on the Turley ranch during the time he leased it. His residence was near Acton, Montana, and he would drive to the ranch once or twice a week to look in on the stock. Turleys' testimony was that Delia Turley and her daughter, Rita, looked after Hill's stock while he was gone, rounding up strays, and feeding and watering the stock. Delia Turley also testified that Bill Hill agreed that if she would attend to the calving of Hill's 12 cows and wean the calves during the winter of 1982 and 1983, Hill would care for Turley's ranch while they went to horse shows during the

following summer and that he would clean the corrals and fertilize section 12 of the ranch. The Turleys performed their part of the further agreement, but Hill did not perform his part of the alleged bargain.

Hill filed suit against the Turleys, claiming conversion of his cattle after the termination of the lease. The Turleys answered the complaint, denying the conversion, and counterclaiming for 7 months rental for the second year of the lease, $4,050 for the care of plaintiff's livestock for which they asserted an agister's lien, and $5,000 damages for overgrazing.

The contentions of the parties were summarized in the pretrial order. Hill contended that the oral lease was a month-to-month lease and not a yearly lease and that he had fully paid the monthly rental. He also contended that his livestock had been converted and he claimed both compensatory and punitive damages. Hill further contended that the three year oral lease contended for by the Turleys was barred under § 28-2-903, MCA, the statute of frauds.

The Turleys contended that the lease was an oral lease for a period of three years with a cash rental of $12,000 per year, that the second year of the oral lease was in full force and effect and that Hill still owed $7,000 for the remaining 7 months of the second year. They further contended that they were entitled to $4,050 for calving, doctoring, checking wells, and otherwise looking after the cattle of Hill.

The jury returned two verdicts in the cause. In one verdict, they found in favor of the Turleys and against Hill upon the complaint. In the second verdict, they found in favor of the Turleys and against Hill and assessed Turleys

- 4 -

damages in the sum of "$7,000 only and direct that Mr. Hill's cattle be returned to him." The court entered judgment for the sum of $7,000 and costs at $78.95 in favor of the Turleys.

After the judgment, Hill filed a motion to alter or amend the judgment and his attorneys claimed an attorneys lien upon Hill's cattle which were then subject to execution upon the judgment. The District Court denied the motion to alter or amend the judgment, interpreting the verdicts to mean that the plaintiff got nothing on his claims and that the defendants were entitled to $7,000 and no more and that defendants were not entitled to keep the cattle in addition. The court denied the attorneys lien on Hill's cattle, saying that the lien of the plaintiff's attorneys could not attach where there is no verdict or judgment in favor of Hill.

LEASE CONSTRUCTION

The fact dispute as to the lease is whether it was a month-to-month lease as contended by Hill, or an oral lease partially performed for one year as contended by the Turleys. The District Court instructed the jury, in its instruction no. 9 in the language of section 70-26-201, MCA, that "[a] hiring of real property, other than lodgings and dwelling houses, in places where there is no usage on the subject, is presumed to be for one year from the commencement unless otherwise expressed in the hiring." It appears the jury found in favor of the yearly lease.

We held in Rosneau Foods v. Coleman (1962), 140 Mont. 572, 374 P.2d 87, that depending on the circumstances, an invalid oral lease may create a month-to-month or a year-to-year tenancy. In Rosneau, we quoted what is now § 70-26-201, MCA, and concluded that the fact that the rent was

paid on a monthly basis was not in and of itself sufficient to overcome the presumption created in § 70-26-201, MCA, in favor of a yearly lease.

In Kettlekamp, et al. v. Watkins (1924), 70 Mont. 391, 225 P. 1003, we covered the point of partial performance. There the renters attempted to avoid paying for the balance of the term of the lease, which was not in writing. This Court held that there was a difference between a parole lease entirely executory and one which had been partially performed. The partial performance of a parole lease for a term beyond that allowed by the statute of frauds will take it out of the operation of the statute. The Court stated:

> . . . While there is some diversity of opinion as to the act which will constitute part performance sufficient to remove the lease from the operation of statute, the overwhelming weight of authority sustains the view that taking possession and making alterations of the property and paying the rent agreed upon for a considerable period of time-as in the case before us-constitutes part performance, within the general rules stated above.

70 Mont. at 399-40, 225 P.2d 1006.

And see Dyksterhouse v. Doornbos (1977), 172 Mont. 461, 564 P.2d 1293.

The object of the statute of frauds is to prevent fraud, and not to accomplish fraudulent purposes. Hayes v. Hartelius (Mont. 1985), 697 P.2d 1349, 42 St.Rep. 457.

At the trial, the Turleys' neighbor, Robert Tully testified that the standard practice and usage in the area was to lease grazing land by the year. Under the law and the jury verdict, we hold that Hill's lease of the grazing land, though oral, was on a year-to-year basis; that Hill was in the second year of his tenancy; and that he owed the balance of the yearly rental when he terminated the lease midterm on October 1, 1983.

AGISTER'S LIEN

The District Court submitted this issue to the jury under the instruction that if there were an express or implied contract for keeping, feeding, herding, pasturing or ranching stock, the farmer to whom the stock was entrusted had a lien upon such stock for the amount due for keeping, feeding, herding, pasturing or ranching of said stock and could retain possession thereof until the sum due was paid. See § 71-3-1201(1), MCA.

Hill claimed that the Turleys were not entitled to an agister's lien in this case, and that because they kept his cattle, he was entitled to damages for conversion and for punitive damages as well. The jury found against Hill on those issues in one verdict but directed in the second verdict that the cattle be returned to Hill.

The District Court refused to alter and amend the judgment with respect to the agister's lien, saying:

This Court interprets the verdicts to mean that:

(1) Plaintiff gets nothing; and

(2) Defendants are awarded $7,000 and only that amount and no more, and that defendants will not be entitled to keep the cattle in addition. The jury verdict was against the plaintiff and in favor of the defendants. To interpret otherwise would frustrate the jury verdict.

We agree. The plaintiff's claim for damages for wrongful conversion of his cattle was decided adversely to Hill by the jury verdict.

Hill contends on appeal that since he was entitled to the peaceful possession of the ranch premises for the purposes of running cattle thereon under his grazing lien, the possession of cattle was with Hill and not with the Turleys. He further contends that an agister's lien arises

only when the possession of livestock is delivered into the care, custody and control of another under a contract of bailment and such lien is not given to an employee or a herder. He cites Engle v. Pfister (1953), 127 Mont. 65, 257 P.2d 561; Noel v. Cowan (1927), 80 Mont. 258, 260 P. 116; Love v. Hecer (1923), 67 Mont. 497, 215 P. 1099. Moreover, Hill contends that the Turleys did nothing to enforce their asserted lien under the mandatory procedures to be followed in § 71-3-1203, MCA, respecting enforcement.

The effect of the jury verdict was to order that Hill's cattle be returned to him, and that he recover no damages for the alleged conversion of his cattle. The request of Hill on appeal is that the case be sent back to the District Court for the "limited purpose of determining the amount of damages due Hill for conversion of his cattle including a reasonable allowance for attorney's fees, both in the lower court and upon appeal." We would indeed frustrate the purpose of the jury, if, after the jury had decided that Hill was not entitled to damages, we were now to return the cause for another jury trial upon the same issue of damages. Whether or not the Turleys claim of agister's lien was valid, the jury has already determined that Hill is entitled to no damages by virtue of the same.

OTHER ISSUES

Hill contends that the District Court committed error in allowing Robert Tully to testify that prior to the Hill lease, Tully had negotiated with the Turleys on a proposal for Tully to lease the ranch for $12,000 for the entire unit for the period of one year. Tully also testified, as we have said, to the usage with respect to yearly tenancies.

The testimony relating to Tully's negotiations for a lease with the Turleys was indeed hearsay, but we deem it harmless. His testimony with respect to usage, however, was based upon the fact that he was a neighbor of the Turleys, and had over 20 years of ranching experience in the area. The District Court determined that his testimony as to usage would be useful, and usage was an issue in light of the language of § 70-26-201, MCA. We find no error here.

Hill claims error in the refusal by the District Court of the following instructions:

No. 11: You are instructed that a tenant holding premises by verbal letting for an indefinite term at a monthly rental becomes a tenant from month-to-month.

No. 12: You are instructed that if you find from the evidence that the parties attempted to negotiate a lease for a period other than month-to-month, but that no agreement was ever concluded between the parties, except that monthly rental of $1,000 would be paid, then the tenancy is one of month-to-month.

Proposed no. 11 would be an improper mandatory instruction and against the presumption provided by statute in § 70-26-201, MCA. We find no statutory or case support for proposed instruction no. 12 and again it would set aside the presumption of § 70-26-201, MCA, and usurp the fact-finding province of the jury.

The court instructed the jury in the language of § 70-26-201, MCA, as follows:

A hiring of real property, other than lodgings and dwelling houses, in places where there is no usage on the subject, is presumed to be for one year from its commencement unless otherwise expressed in the hiring.

Hill contends that the instruction should not have been given because Turleys on the one hand were claiming that they had entered into a three-year oral lease while Hill was

- 9 -

contending that it was leased from month-to-month. Thus, Hill contends that the term of the lease was "otherwise expressed in the hiring," and the instructions should not have been given.

In Geovanetti v. Schab (1910), 41 Mont. 297, 109 P. 141, this Court applied the presumption provided in § 70-26-201, MCA (formerly § 5228, R.C.M. 1907) where the tenant claimed that he had a lease from year-to-year at $40 per month, and the landlord claimed the lease to be one from month-to-month. In applying the statute, this Court found under the testimony of the tenant, that the lease did run from year-to-year, that the third year of the lease had not expired when the landlord attempted to increase the amount of rental, and that the year-to-year lease was in its third year.

The jury in this case, as the trier of fact, could accept or reject Hill's contention that the lease was from month-to-month; it could also reject Turley's contention that the lease was for a term of three years. Since this case involved a hiring of agricultural property, and not lodgings and dwelling houses, and since Hill offered no usage contrary, the presumption provided in § 70-26-201, MCA applied, and the jury was entitled to be instructed with respect to the presumption to determine the question of fact. The presumption provided by § 70-26-201, MCA is a disputable presumption, which could be overcome by a preponderance of evidence contrary to the presumption. When the presumption is not overcome, the trier of fact must find the assumed fact in accordance with the presumption. Rule 301(b)(2), M.R.Evid.

Moreover, a finding in accordance with the presumption of § 70-26-201, MCA, is not inconsistent with Turley's

contention that there was an oral lease for three years, and that the lease, when it was terminated by Hill, was in the second year of its term. We find no error in the giving of the instruction based on the presumption.

Hill also objected to the instruction given to the jury relating to an agister's lien. Whether the instruction was proper or not under the facts of this case, the jury did not find an agister's lien existed, and so Hill was not prejudiced by the instruction. Instructions which were not prejudicial do not constitute reversible error. Gaither v. Richardson Construction Co. (1969), 152 Mont. 504, 452 P.2d 428.

Another point of error claimed by Hill is that the court improperly permitted Turley's counsel during voir dire of the jury to intimate to prospective jurors what the instructions of the court on the law of the case might be. Hill's counsel objected to the questions, and the court, upon ascertaining that the form of the question was addressed hypothetically (that if the court gave such an instruction, the prospective juror would follow the instruction in deciding the case) the court overruled the objection and granted Hill's counsel a continuing objection to the questions.

Hill's specific objection is that under Rule 51, M.R.Civ.P., instructions are to be settled by the court, out of the presence of the jury, and with the participation of all counsel. When counsel suggests to prospective jurors during voir dire what the law of the case is or may be, the intent and purpose of Rule 51 is circumvented.

We do not agree with Hill's contention that such questions during voir dire circumvent the court's duty eventually to settle instructions with the participation of

counsel under Rule 51, M.R.Civ.P. We do not find prejudice to Hill from the questions that were put here. The scope of questioning on voir dire is largely a matter of discretion for the trial judge who may set reasonable limits on the examination but should permit liberal and probing examination calculated to discover possible bias or prejudice, with due regard to the interests of fairness to both parties. Borkoski v. Yost (1979), 182 Mont. 28, 594 P.2d 688. It is not improper to pose to prospective jurors hypothetical questions about possible instructions from the court to ascertain if the prospective juror would follow the law as given to the jury by the court. It is improper to pose hypothetical questions which have the effect of requiring a pledge or commitment from the juror that he would decide a certain way upon particular instruction as that would have the effect of prejudging the case. See 47 Am.Jur.2d Jury § 203 (1969). The trial judge, in exercising his discretion, should liberally allow questions on voir dire which seek to determine bias and prejudice if any, of the jurors, but not questions which seek to obligate a future course of action by the juror from hypothetical facts or law. We find no error on this point in this case.

On another point, Hill's counsel contends that Turley's counsel committed "plain error" in his argument to the jury at the summation. The District Court submitted four forms of possible verdicts to be used by the jurors in their findings. During oral argument Turley's counsel took the two forms that favored Turley, and demonstrated to the jury how they should be signed. He also told them that if they found for Hill they would have to sign the other two verdicts. Hill's counsel now claims that the argument was misleading,

contending that since the jury ordered the cattle to be returned to Hill, as a matter of law, the conversion was unlawful and Hill was entitled to damages. Hill's counsel contends that the plain error doctrine of Halldorson v. Halldorson (1977), 175 Mont. 170, 573 P.2d 169, should be applied by us, since no objection was made to the oral argument by Hill's counsel.

There is no weight to this issue. Turley's counsel merely explained to the jury how they should use the verdict form if they found for his clients and incidentally explained that they should use the other two verdict forms if they should find for Hill. The plain error rule does not apply in this case.

Again, Hill contends that the judgment entered by the court did not conform to the jury's verdict. In the verdict in favor of Turley for $7,000 in damages, there was added in handwriting "$7,000 only, and direct that Mr. Hill's cattle be returned to him." During deliberations, the jury had sent a question out to the court as to whether signing the "top" verdict would give the cattle back to Hill. The court answered in writing, "Please use verdict forms you have and you may add to same if you wish." The court in entering judgment on the verdict, ordered $7,000 against Hill on the Turley's counterclaim, and against Hill on all issues in regard to Hill's complaint. The judgment itself did not direct the Turleys to return Hill's cattle to him.

Hill contends that the judgment followed must conform to the verdict or findings. Morse v. Morse (1945), 116 Mont. 504, 508-09, 154 P.2d 982.

Following the entry of the judgment, Hill filed a motion to alter or amend the judgment and for a writ of assistance

directing the sheriff to return the cattle to Hill if they were not returned voluntarily by the Turleys. Hill's counsel also claimed an attorneys lien under § 37-61-420, MCA, as attaching to the cattle.

The District Court denied the motion to alter or amend the judgment interpreting the two verdicts to mean (1) the plaintiff gets nothing and (2) the defendants were awarded $7,000 only, and that the defendants would not be entitled to keep in the cattle in addition. The District Court said the jury verdict was against the plaintiff in favor of the defendants and to interpret the verdict otherwise would frustrate the jury verdicts. The court further denied the claim of attorneys lien on the ground that such a lien does not attach to the verdict or judgment granted in the case because the judgment was not rendered in Hill's favor. The District Court further allowed the Turleys to proceed to execute upon the cattle in their possession to satisfy the judgment. The cattle were eventually sold at sheriff's sale and the proceeds applied to the judgment.

At the same time as he filed the motion to alter or amend the judgment, on August 13, 1984, Hill also filed a written notice of attorneys lien and an equitable assignment. In that notice he stated that on October 21, 1983, he had made an equitable assignment of all his right, title, and interest in and to the livestock held by the Turleys. He stated when he retained his lawyer to represent him in the action, he advised the lawyer that the lawyer would have a lien on all the cattle belonging to him held by the Turleys for services to be rendered and costs to be incurred in connection with the upcoming lawsuit against the Turleys.

Upon that agreement, his counsel embarked upon the services which he rendered in connection with the suit.

Under § 37-61-420(2), MCA, an attorney who appears for a party has a lien upon his client's cause of action which attaches to a verdict or judgment in his client's favor and the proceeds thereof in whose hands they may come. The District Court was correct in determining that the jury in this case has not decided in favor of Hill. The handwritten portion of the verdict favoring Turleys was merely a limitation upon their damages, the jury intending that Turleys should not collect $7,000 and keep the cattle also. There was no verdict or judgment in this case in favor of Hill. The attorneys claimed lien was properly denied.

Accordingly, we affirm the judgment in the District Court.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

_____

_____

- 15 -

John Conway Harrison

Justices