No.  92-209

IN THE SUPREME COURT OF THE STATE OF MONTANA

1993

LUCILLE P. YOUNG and
LAURENCE G. YOUNG,

            Plaintiffs and Appellants,

      -v-

VERN H. HORTON, M.D.,

            Defendant and Respondent.


APPEAL FROM:  District Court of the Fourth Judicial District,
              In and for the County of Missoula,
              The Honorable Edward P. McLean, Judge presiding.


COUNSEL OF RECORD:

            For Appellant:

            Erik B. Thueson, Thueson Law Office, Helena, Montana

            For Respondent:

            E.  Craig  Daue,  Garlington,  Lohn  &  Robinson,
            Missoula, Montana

Submitted on Briefs:  November 24, 1992

Decided:  June 10, 1993

Filed:

FILED

JUN 10 1993

Ed Smith
CLERK OF SUPREME COURT
STATE OF MONTANA

Clerk

Justice R. C. McDonough delivered the Opinion of the Court.

This is an appeal from a Fourth Judicial District Court, Missoula County, jury verdict in a medical malpractice action.

There are several issues on appeal:

1. Was there sufficient evidence to support the jury's verdict that Respondent Dr. Vern H. Horton (Horton) obtained informed consent for the surgery from Appellant Lucille Young (Young)?

2. Were expert opinion and medical journal articles erroneously admitted on the issue of memory and credibility?

3. Did the court abuse its discretion when it refused to allow the Appellants Lucille and Laurence Young (Youngs) to ask hypothetical questions about the law during voir dire?

4. Were the parties affected by a recess of 5 days and one additional day later, during the trial and if so, was Appellants' right to a fair trial prejudiced because of the recesses?

Lucille Young began experiencing pain in her right leg after walking and when she asked her family doctor, Doctor Coriell about it, he determined that she was suffering from restriction of arterial circulation in the leg. He referred her to Horton for diagnosis and treatment of the problem.

Horton scheduled an arteriogram for Young and when he obtained the results, prescribed surgery to alleviate the condition. Horton

2

performed an aorto-bifemoral bypass on March 3, 1988 at Missoula Community Hospital. As a complication of the surgery, Young suffered a thrombosis of the anterior spinal artery, resulting in paraplegia. The complaint in this action was filed on February 26, 1990.

## 1. Informed Consent

Youngs argue that there was insufficient evidence for the jury to conclude that Horton obtained informed consent. We cannot agree.

> This Court's function in reviewing jury verdicts is necessarily very limited. We must review the evidence in a light most favorable to the prevailing party to determine whether substantial evidence supports the jury's verdict. This Court cannot reweigh the evidence or disturb the findings of a jury unless that evidence is so inherently impossible or improbable as not to be entitled to belief.

Sizemore v. Montana Power Co. (1990), 246 Mont. 37, 48, 803 P.2d 629, 636 (citations omitted).

Horton testified that he advised Young of the risks of the surgery, such as death, lung damage, and problems with her heart or the graft or bleeding when he spoke with her and her husband, Laurence, on March 2, 1988 in her hospital room. Dr. Golding, one of Horton's medical experts, stated that "his discussion...covers the significant risks of the operative procedure and would be the standard discussion that a surgeon would have with the patient prior to the surgery." Dr. Szilagyi, Horton's other medical expert, stated that "[a]ccording to the record, Dr. Horton informed the patient and her husband fully in complete accordance with what now is generally regarded as duty of the surgeon."

3

Although the Youngs dispute that there was ever any discussion about the risks of the operation, "when conflicting evidence exists, the credibility and weight given to the conflicting evidence is within the jury's province." Whiting v. State (1991), 248 Mont. 207, 213, 810 P.2d 1177, 1181. "[T]his Court will not overturn its determination by weighing conflicting evidence on appeal." Davis v. L.D.S. Church (1990), 244 Mont. 61, 68, 796 P.2d 181, 185.

The jury concluded that Horton obtained Young's informed consent before he performed the surgery. We conclude that there is substantial credible evidence to support the jury's verdict that Horton obtained Young's consent prior to her surgery.

2. Expert Opinion and Medical Journal Articles

The scope of review for discretionary evidentiary rulings of the trial court is whether there has been an abuse of discretion. Steer Inc. v. Department of Revenue (1990), 245 Mont. 470, 475, 803 P.2d 601, 603-604.

The Youngs argue that the trial court improperly admitted four medical journal articles concluding that the majority of patients forget that they gave informed consent to their doctors prior to surgery. The Youngs contend these articles are improper for three reasons:

a. The articles lack probative value and are unfairly prejudicial.
b. The expert testifying regarding the articles did not give his conclusion to a degree of medical certainty.
c. The respondent violated discovery rules.

a. The Youngs state that "the issue of credibility is supposed

4

to be decided by the jury--not by studies created by strangers which do not even fit the circumstances of the case." Respondent, however, contends that under Rule 702, M.R.Evid., expert testimony is permitted "if scientific knowledge will assist the jury to understand the evidence to determine a fact in issue."

We conclude that the medical articles and the related testimony were admissible. The trial court ruled that the expert could testify and refer to the medical articles but they could not go before the jury as exhibits. Further, they could be referred to as accepted studies but the expert was not to testify as to whether Young was advised of the risks of surgery; that would be a question for the jury.

"[The] determination of relevancy and of the admissibility of evidence is within the discretion of the trial court. [W]e will not disturb the District Court's permission to admit the disputed...testimony unless the court abused its discretion." Dahlin v. Holmquist (1988), 235 Mont. 17, 20, 766 P.2d 239,241. Here, the trial court carefully delineated what was admissible and what was inadmissible. The expert's testimony was based on four medical journal articles and his own experience as a doctor. He did not testify on "the workings of her mind" nor did he comment as to whether Young had given informed consent.

He did testify as to memory of a specific experience with which he had knowledge and used learned treatises as the basis of his testimony. Testimony by experts is admissible if scientific knowledge will assist the trier of fact to understand the evidence

or to determine a fact in issue. Rule 702, M.R.Evid. Here, the trial court determined that this medical doctor had knowledge and experience to testify as to the authoritativeness of the medical journal articles and could assist the jury with information about surgical patients and their memory of informed consent. He could testify as to the conclusions of the medical studies and of his own experience, but not as to the ultimate fact of whether Young gave Horton informed consent. Mahan v. Farmers Union Cent. Exchange (1989), 235 Mont. 410, 421-422, 768 P.2d 850, 857. The trial court did not abuse its discretion in admitting the four medical journal articles and expert testimony as to his experience with the subject matter.

b. The Youngs argue that the medical expert did not render a "conclusion to a reasonable degree of medical certainty that these studies or the expert's opinion on them applied to [Young] and her memory," The Youngs' objection came after Horton's attorney asked the expert if his experience in his own practice was consistent with a study in which most patients forgot the possible risks of the surgery the doctor discussed with them. The Youngs' attorney stated, "I would object, Your Honor, on the grounds that opinions have to be given with reasonable medical certainty." The doctor in this case was not asked to give an opinion, rather, to speak of his past experience. Under Rule 702, M.R.Evid., an expert may testify in the form of an opinion or <u>otherwise</u>. His answer here was acceptable in its form.

c. The Youngs also argue that the medical articles were

6

inadmissible because they were unfairly surprised and Horton violated discovery rules. They further contend that they made several attempts during discovery to obtain this information, but it was not until after the pretrial conference that the articles and the expert's opinion were revealed.

The Pretrial Order, Part VI states that "[t]he parties shall exchange on or before November 27, 1991 any learned treatises, medical journal articles, or similar documentary proof that they may wish to use during the case in chief of the trial." On November 27, 1991, respondent's attorney sent two letters to appellants' attorney by telecopy. The first letter contained a list of medical journal articles the respondent planned to rely on during his case in chief. The second letter contains information regarding the issues about which the medical expert, Dr. Golding, would testify. These letters were provided within the schedule set out in the pretrial order of November 20, 1991.

In addition, Part III, Defendant's contentions 8 in the pretrial order, states that: "[s]urgical patients have a well-recognized tendency recall (sic) poorly the risks about which they were informed prior to the surgery. They tend to have greater recall of the information given to them before the surgery about the benefits of their operation." This contention provides sufficient notice that the memory of giving informed consent would be an issue for the respondent. The medical journal articles and the expert's testimony about patient recall about giving informed consent were properly admitted.

7

## 3. Voir Dire

The Youngs also argue that the trial court improperly restricted voir dire. They state that when their attorney attempted to ask the jurors whether they would follow the law on informed consent even if the surgery itself was technically correct, the trial court prevented them from asking any questions about the law at all. Horton counters that appellants had an opportunity to fully discuss the jury's duty to adhere to the law as the judge explains it.

"Absent an abuse of discretion...the trial court has great latitude in controlling voir dire." Priest v. Taylor (1987), 227 Mont. 370, 382, 740 P.2d 648, 655. (Citation omitted.) Upon review of the trial transcript, this Court concludes that the trial court did not abuse its discretion when it limited the Youngs' attorney's voir dire.

The Youngs' attorney was able to question the panel generally as to whether they would follow the law as provided by the judge even if philosophically opposed. He later attempted to inquire as to whether the potential jurors would follow the particular law of informed consent. "The scope of questioning on voir dire is largely a matter of discretion for the trial judge who may set reasonable limits on the examination but should permit liberal and probing examination calculated to discover possible bias or prejudice, with due regard to the interests of fairness to both parties." Hill v. Turley (1985), 218 Mont. 511, 520, 710 P.2d 50, 56. Here, the Youngs' attorney had already elicited the assurance

8

of the jurors that they would follow the law given by the judge even if they did not agree with the law. Anything more would be cumulative and the trial court properly exercised its discretion to move the voir dire process along.

#### 4. Recess during Trial

Finally, the Youngs contend that their right to a fair trial was jeopardized by the interruptions during the course of the trial. The parties were given the trial schedule, including the two scheduled recesses at the pretrial conference on November 20, 1991. The trial started on December 2, continued on December 3, then a break was taken until December 9. The trial then continued on December 10, recessed again on December 11 and concluded on December 12.

We conclude that the trial court did not abuse its discretion in conducting the trial as scheduled. The Youngs' attorney did not object to the schedule at the pretrial conference nor did any jurors complain of problems due to the schedule. The Youngs presented no evidence of outside influences affecting the jury.

When the court recessed on December 3, they were admonished not to discuss the case among themselves or anyone else. On December 10, before the trial was recessed until December 12, the court stated:

> The instruction I have been giving about not talking to anyone about this case becomes particularly important at this time. It is necessary that you retain an open mind and not form any opinion prior to this matter being submitted to you for your deliberations. In order to do that, we have to insure that you not discuss this case amongst yourselves or with anyone else, and that includes family members, prior to the matter being submitted to you for your deliberations.

9

Any statements by appellants that they were prejudiced by the recesses is speculation. The trial court did not abuse its discretion when it recessed for other court matters.

AFFIRMED.

_____
                                    Justice

We Concur:

_____

_____

_____
                Justices

Justice William E. Hunt, Sr., specially concurring.

I concur with the majority's decision upholding the verdict of the jury relating to the issue of informed consent. While conscious of the province of the jury in determining the facts, I must comment upon what the jury found to be "informed consent."

The discussion took place in a stressful atmosphere which would not enable someone to be in the best frame of mind to give informed consent. Dr. Horton visited Mrs. Young the night before the operation. He explained the risks of the surgery in a couple of sentences. He did not provide her with any further explanation of the risks of the surgery, nor did he inform her of any alternative treatments that were available. Mrs. Young testified that she was frightened the day before the operation. Mrs. Young's surgery was merely an elective procedure. At the time of the conversation, the surgical team was placed together and bills for the surgery were already being generated.

Two doctors testified as expert witnesses for Dr. Horton stating that the explanation of the risks was adequate. Mrs. Young was unable to offer expert testimony to rebut those experts. Because she could not do so, the jury was left with no choice but to reach the verdict that it did. For this reason, I reluctantly concur with the decision of this Court.

_William E Hunt_
Justice

11